## STOLLE et al. v. STUART.

One who is prevented from completing performance of a contract for services because of sickness may recover the reasonable value of the services rendered.

Though one's failure to fully perform the contract for his services is inexcusable, he may recover the reasonable value of services rendered, less any damage to the employer on account of the breach.

Evidence in an action for labor performed on defendant's farm held to sustain a verdict for plaintiffs.

On appeal, conflicting evidence will be considered only to determine whether it is sufficient to sustain the verdict.

(Opinion filed, February 5, 1908.)

Appeal from Circuit Court, Marshall County.   Hon. LYMAN T. BOUCHER, Judge.

Action by John Stolle and another against T. M. Stuart. From a judgment for plaintiffs, defendant appeals.   Affirmed.

*Byron Abbott,* for appellant.   *Charles M. Stevens,* for respondents.

FULLER, J.   As a complete defense and by way of counterclaim to this action to recover $180, as reasonable compensation for certain labor performed by respondents, who are husband and wife, appellant pleaded the breach of an express contract, resulting, it is alleged, in $199.85 damages to him, and the sufficiency of the evidence to sustain a verdict of $60 in favor of respondents is the only question presented by this appeal.

Briefly stated the material facts are as follows:   November 8, 1900, respondent John Stolle entered upon the performance of a contract made that day, by the terms of which he was to work on appellant's farm one year for $240, and while there were negotiations between the parties to the effect that respondent Tillie Stolle would work during the same period as appellant's housekeeper for $160, he then knew that she was in ill health and wholly

unable to commence the labor with her husband, and that there was considerable doubt concerning the recovery of her health and sufficient strength to perform the arduous housework required. Appellant's testimony regarding the contract and what was said at the time is, in substance, that both respondents were to work for one year for the aggregate sum of $400, of which John was to receive $240 and Tillie $160, conditioned upon her ability to work during the entire year; and that he thus fixed the compensation of each so that the matter would be understood in case she was unable to begin later and continue in his service. Knowing then, as he certainly did, her condition of ill health and approaching motherhood, and the fact that it was doubtful when, if ever, she would be physically able to perform his household duties, or make an effort to do so, the inference is irresistible, from his own undisputed testimony, that the agreement was contingent upon the event of her recovery, and that her compensation would be at the rate of $160 per year for whatever time she might be able to work during the employment of her husband. Pursuant to this conditional agreement she went to appellant's farm on the 5th day of January, 1901, and worked continuously until the 5th day of April of that year, when her illness became so aggravated that a physician called at the time required her to leave the place, and go to Hecla for medical treatment, and a few days later it became necessary for respondent John Stolle to take care of his sick wife and child, and, according to the advice and direction of her attending physician, he finally left the place on the 16th day of April, 1901.

Under the allegations of his answer and counterclaim appellant testified that respondent John Stolle quit work in the spring just when they were ready to commence seeding, and that he was obliged to employ various other men during the farming season at an expense of $250, and that he had paid respondents $19.82, and $5 to the doctor on their account; but this last item is controverted by John who testified that he gave the $5 to appellant, and directed him to hand it to the doctor, which was done.

Relative to another item of damage deemed recoverable under the pleadings appellant testified on direct examination as follows: "I made three trips to Lidgerwood hunting a man to take Mr.

Stolle's place. I went with my team. I also made a trip down to Jerome Morse's, six miles away, and I made two trips to Mr. Monnies, about six miles away. I made three or four trips to Veblen and south of Veblen after men. I also was compelled to go with the team. Myself and my team for these trips was worth four dollars ($4) a day. It takes a full day to go to Lidgerwood and back, as it is about eighteen miles from my place. The time that I spent hunting men to take Mr. Stolle's place was worth at least twenty-five dollars ($25). I paid Mr. Stolle when he left nineteen dollars and eighty-two cents ($19.82) and afterwards I paid a doctor bill for him of five dollars ($5). Mr. Stolle did not work for me, nor did his wife after the 5th and 16th days of April, 1901." Having made this statement and previously testified that the $250 expended for labor was paid to different men, two of whom were frequently employed at the same time appellant was interrogated by counsel for respondent, and testified with commendable frankness on cross-examination as follows: "When I employed two men at a time as I have stated, I expected these two men to do more work than Stolle alone could do, and paid them accordingly. I would have had to employ extra help to do all these men did, even if Stolle had remained with me. Lidgerwood was my postoffice address, and I went there to get my mail, when I hired these men at Lidgerwood as I have testified. When I went to Jerome Morse's place I did not go specially to hire a man, nor did I make these trips to Mr. Monnies to hire these two men. I used my driving team to make these trips, and would have had to use them in going there, even if I did not hire any men. I did not make the trips and use the horses at these times solely to get men to work for me." It is conceded that John Stolle was in the employ of appellant for five months and eight days and Tillie for exactly three months, and it cannot be said that she violated the terms of the contract by being unable to commence work with her husband on the 8th day of November, 1900, or by leaving the farm on the 5th day of April, 1901, when by reason of illness and physical exhaustion she could stay no longer. The undisputed evidence shows that they both worked long hours and faithfully, so that Tillie earned $40, and but for the

breach of contract John would have been entitled to receive $105.33, and he testified at the trial that the services of the two for the time employed was reasonably worth $35 per month according to the prevailing wages for that winter, and that they had been paid just $19.82.

The syllabus by the court in McClellan v. Harris, 7 S. D. 447, 64 N. W. 522, is as follows: "By statutory implication, a contract to perform personal services for a fixed term contains a stipulation releasing an employe from liability when performance is prevented by an irresistible, superhuman cause. Consequently, one who is prevented by sickness, occasioned by no fault of his, from continuing in the service of his employer, under contract to labor upon a farm for a specified term at a stipulated price per month, may recover reasonable compensation for services performed, irrespective of the rule by which to measure the rights of one who wilfully, and without good cause, quits his employer during the term for which he has agreed to labor." Granting that the failure of John Stolle to fully perform his contract is inexcusable, he was entitled to recover the reasonable value of the services rendered less the damage, if any, sustained by appellant on account of the breach of contract, and the question was peculiarly one for the jury to determine from all the evidence in the case.

From the undisputed testimony of appellant it is plain that respondents were not obligated to perform all the labor that might be required to properly conduct his farm, and he was not entitled to recover for extra help which he swears he would have been obliged to employ had they continued throughout the year. Moreover respondents deny the $5 payment and the jury would have been justified in disallowing appellant's claim of $25 as compensation for time devoted to a search for laborers during the season. Though conflicting in some respects and doubtful as to the amount of damages that might lawfully be deducted from respondent's claim of $180, the evidence is certainly sufficient to sustain the verdict in their favor for $60. Where conflicting facts are thus sent to a jury it is not the province of this court to consider the evidence further than is necessary to determine whether it is

sufficient to sustain the case of the prevailing party.   Bedow v. Tonkin, 5 S. D. 432, 50 N. W. 222.

As the evidence mentioned in this opinion, fortified by facts and circumstances to which we have deemed it unnecessary to refer abundantly sustains the verdict, the judgment appealed from is affirmed.